**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| JOE E. SMITH, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:13-3014** |
| | ) | |
| **AMERICAN EXPRESS, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following Motions: (1) Defendant Bayview Loan Servicing's Motion to Dismiss (Document No. 13.), filed on April 5, 2013; (2) Defendant Litton Loan Servicing's Motion to Dismiss (Document No. 17.), filed on April 12, 2013; (3) Plaintiff's Motion for Default Judgment Against First Federal Credit Control (Document No. 22.), filed on May 1, 2013; (4) Plaintiff's Motion for Default Judgment Against GMAC Mortgage (Document No. 24.), also filed on May 1, 2013; (5) Defendant Citibank N.A.'s Motion to Dismiss (Document No. 25.), filed on May 15, 2013; (6) Defendants BAC Home Loan Servicing, LP and Bank of America, N.A.'s Motion to Dismiss (Document No. 32.), filed on June 17, 2013; and (7) Plaintiff's "Motion to Strike the Defendants' Pleadings in Whole" (Document No. 37.), filed on June 19, 2013.

## PROCEDURAL AND FACTUAL HISTORY

On January 9, 2013, Plaintiff, proceeding *pro se* and in confinement at FCI McDowell, filed his Complaint in the Circuit Court of McDowell County, West Virginia.[1] (Document No. 1, pp. 5 -

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

12.) Plaintiff names the following as Defendants: (1) American Express; (2) BAC Home Loan Service, LP ["BAC"]; (3) Bank of America; (4) Bayview Loan Servicing ["Bayview"]; (5) Citicard CBNA ["Citibank"][2]; (6) Huntington National Bank ["HNB"]; (7) Litton Loan Servicing ["Litton"]; and (8) First Federal Credit Control ["FFCC"]. (Id.) Plaintiff complains that "a 'Fraudulent Account' and 'Identity Theft' has taken place under his name. (Id., p. 7.) Plaintiff states that he "can and will prove that he has been incarcerated when these so-called-contracts were opened." (Id.) Plaintiff provides partial account numbers of the accounts he alleges to be fraudulent. (Id.) Plaintiff alleges that he notified Defendants of the inaccurate information. (Id.) Plaintiff states that he "challenges the following defendants to present the evidence that a contract was established in his name by him, and if the defendants cannot present this evidence he requests that a new credit report be done stating that it was cleared from off his name." (Id.) As relief, Plaintiff requests monetary relief and "his credit report be clear of any transactions taken in his name dealing with these accounts." (Id., p. 8.)

On January 31, 2013, Defendant Citibank filed its Answer. (Id., pp. 5, 13 - 17.) On February 6, 2013, HNB filed its "Notice of Bona Fide Defense." (Id., pp. 5, 22 -23.) On February 19, 2013, Citibank filed its Notice of Removal and HNB's "Consent to Removal" with this Court. (Document No. 1.) On February 20, 2013, Plaintiff filed his Reply to Citibank's Answer. (Document No. 2.) On February 26, 2013, HNB filed its Answer. (Document No. 5.) On March 15, 2013, Plaintiff filed his "Traverse to the Defendant's Complaint by the Huntington National Bank." (Document No. 6.) On March 21, 2013, Bayview and Litton filed their Consents for Removal. (Document Nos. 7 - 8.) On

_____

[2]   In filing its Notice of Removal and Answer, Citibank notes that Plaintiff improperly designated Citibank, N.A., as Citicard CBNA. (Document Nos. 1 and 2.)

March 29, 2013 and April 1, 2013, Plaintiff filed his "Motions to Disavowal Removal" (Document Nos. 9 - 12.)

On April 5, 2013, Bayview filed its Motion to Dismiss and Memorandum in Support. (Document Nos. 13 and 14.) Specifically, Bayview argues that Plaintiff's Complaint should be dismissed based on the following: (1) "This Court lacks personal jurisdiction over Plaintiff" (Document No. 14, p. 3.); (2) "Plaintiff failed to obtain effective service" (Id., pp. 3 - 4.); (3) "Plaintiff's claims for damages are preempted" by the Fair Credit Reporting Act ["FCRA"] (Id., p. 4.); and (4) "Plaintiff failed to comply with the procedural requirements of the FCRA" (Id., pp. 5 - 7.). Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 8, 2013, advising him of the right to file a response to Bayview's Motion to Dismiss. (Document No. 15.) On April 12, 2013, Bayview filed its Memorandum of Law in Opposition to Motions to Disavow Removal and Exhibits in support. (Document Nos. 16, 16-1, and 16-2.)

On April 12, 2013, Litton filed its Motion to Dismiss and Memorandum in Support. (Document Nos. 17 and 18.) Specifically, Litton argues that Plaintiff's Complaint should be dismissed based on the following: (1) "All common law and state statutory causes of action relating to credit reporting are completely preempted" by the FCRA (Document No. 18, pp. 2 - 5.); and (2) "Plaintiff failed to comply with procedural requirements of FCRA" (Id., pp. 5 - 8.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 15, 2013, advising him of the right to file a response to Litton's Motion to Dismiss. (Document No. 19.)

On May 1, 2013, Plaintiff filed his Motion for Default Judgment against FFCC and GMAC Mortgage ["GMAC"]. (Document Nos. 22 and 24.) Plaintiff argues that he is entitled to default judgment because he filed his Complaint against FFCC and GMAC, but FFCC and GMAC have

"never responded to the allegations as of date." (Id.) Also on May 1, 2013, Plaintiff filed his "Motion to Consent to the Removal Motion Pursuant to 28 U.S.C. § 1447(c) Requested by Defendants." (Document No. 23.) On May 15, 2013, FFCC filed its Response in Opposition to Plaintiff's Motion for Default Judgment. (Document No. 27.) Specifically, FFCC argues that Plaintiff's Motion for Default Judgment should be denied that "FFCC was neither properly served with the complaint nor did it ever receive the copy of the complaint Plaintiff allegedly sent." (Id.) As an Exhibit, FFCC attaches the "State of Brian Himmell Under Penalty of Perjury." (Id., p. 5.)

Also on May 15, 2013, Citibank filed its Motion to Dismiss and Memorandum in Support. (Document Nos. 25 and 26.) Specifically, Citibank argues that Plaintiff's Complaint should be dismissed based upon the "doctrine of *res judicata*." (Id.) Citibank explains that it "filed suit and obtained judgment against Plaintiff in the Ohio Civil Action for amounts owed on a credit account, the same credit account which Plaintiff now claims was opened fraudulently in his name." (Id.) As Exhibits, Citibank attaches the following: (1) A copy of Citibank's "Complaint for Money" as filed in Lorain County Court of Common Pleas in Citibank v. Smith, Case No. 08-cv-9504 (Document No. 25-1, pp. 1 - 3.); (2) A copy of the Lorain County Court of Common Plea's "Public Docket Information" regarding Citibank v. Smith, Case No. 08-cv-9504 (Id., pp. 4 - 6.); (3) A copy of the "Answer of Defendant with Jury Demand Endorsed Hereon" as filed in Lorain County Court of Common Pleas in Citibank v. Smith, Case No. 08-cv-9504 (Id., pp. 7 - 9.); and (4) A copy of Citibank's "First Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions" as filed in Lorain County Court of Common Pleas in Citibank v. Smith, Case No. 08-cv-9504 (Id., pp. 10 - 22.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on May 16, 2013, advising him of the right to file a response to Litton's

4

Motion to Dismiss. (Document No. 28.)

On May 20, 2013, GMAC filed its "Notice of Bankruptcy and Effect of Automatic Stay." (Document No. 29.) GMAC further notes that it was not named a party-defendant in Plaintiff's Complaint. (Id., p. 1, fn. 1.) As an Exhibit, GMAC files a copy of the Final Supplemental Order concerning its bankruptcy proceedings. (Document No. 29-1.) On May 28, 2013, American Express filed its Answer to Plaintiff's Complaint. (Document No. 30.) On June 17, 2013, BAC and Bank of America filed their Consent to Removal. (Document No. 31.) As an Exhibit, BAC and Bank of America attached a copy of their Answer as filed in the Circuit Court of McDowell County on March 18, 2013. (Document No. 31-1.)

Also on June 17, 2013, BAC and Bank of America filed its Motion to Dismiss and Memorandum in Support. (Document Nos. 32 and 33.) Specifically, BAC and Bank of America argue that Plaintiff's Complaint should be dismissed based on the following: (1) "Plaintiff failed to obtain effective service on Defendants" (Id., pp. 3 - 4.); (2) "Plaintiff's claims for damages are preempted" by the Fair Credit Reporting Act ["FCRA"] (Id., pp. 4 - 5.); (3) "Plaintiff has failed to comply with the procedural requirements of the FCRA" (Id., pp. 5 - 7.); and (4) "Plaintiff's Complaint should be dismissed because his conclusory allegations fail to comply with F.R.C.P. 8(a) and 9(b)" (Id., pp. 7 - 8.). Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on June 18, 2013, advising him of the right to file a response to BAC and Bank of America's Motion to Dismiss. (Document No. 34.)

On June 19, 2013, Plaintiff filed his Response In Opposition to Defendants' Motions to Dismiss and "Motion to Strike the Defendants' Pleadings in Whole." (Document No. 37.) First, Plaintiff continues to argue that he "has been the victim of identity theft, wherein, the perpetrator(s)

established and used the Plaintiff's identity, unbeknownst to the Plaintiff, in establishing accounts with each of the Defendants, and working through the said accounts to acquire goods and services based on the established credit in the said accounts with the Defendants under the Plaintiff's identity." (<u>Id.</u>, p. 1.) Plaintiff argues that the foregoing could have been prevented "had the creditors (Defendants) minimally complied with the operating business practice norm and standards in extending or lending credit as it relates to the verification and certification of a potential customer before any account is established and any credit, goods, or services, are transacted." (<u>Id.</u>) First, Plaintiff alleges that Defendants "are at fault for two reasons:" (1) "[I]t is apparent that the Defendants yield to a lax identification verifying procedure, insubordinate to federal laws before account were actively functional (in fact the Plaintiff was incarcerated during the time of the initial establishing of some of the accounts in dispute and subsequent transactions);" (2) "The Plaintiff was not notified in accordance with federal law before and no later than the 30 day window after the furnishing of the negative (and inaccurate) information to be consumer reporting agencies (Transunion; Equifax Information Services; Experian) so that the Plaintiff could have reasonably noticed the inaccurate information and thereby contested the information before it served taint to his reputation as a delinquent credit-barrower-consumer." (<u>Id.</u>, pp. 1 - 2.) Second, Plaintiff argues that the "Court should – in the interest of justice on the basis of the judicial economy – exercise prudent discretion in not dismissing the Plaintiff's claim on insufficient service of process on the part of the pro se's mishap and should reach the underlying merits of the actual controversy in dispute underlying the federal questions." (<u>Id.</u>, p. 2.) Third, Plaintiff argues that "the Truth-in-Lending Act, 15 U.S.C. § 1601, et seq., provides for specific procedures (or at least a paradigm) for such, in order to formulate polices and procedures to following in ascertaining consumer's identity before

establishing accounts and opening lines-of-credit connected to an account with them in order to detect and prevent identity theft and other fraudulent or other financial crimes."[3] (Id., p. 2.) Plaintiff claims that he requested "certified copies of any documentation bearing the Plaintiff's signature or otherwise a contractual agreement between the Defendants and the Plaintiff evidencing that he owes a debt," but "Defendants have failed to supply the Plaintiff with the requested information." (Id.) Finally, Plaintiff asserts that the Defendants "are in fact guilty of insufficiently serving notice and process on the Plaintiff before or after they reported the inaccurate (or identity-theft-infested) information to the credit reporting agencies underlying the Plaintiff's personal information" in violation of Section 623(7)(A) of the FCRA. (Id., p. 3.) In support, Plaintiff attaches a copy of his "Affidavit of Truth in Support." (Document No. 37-1.)

On July 1, 2013, BAC and Bank of America filed its Response in Opposition to Plaintiff's Motion to Strike. (Document No. 38.) BAC and Bank of America argues that Plaintiff's Motion to Strike should be denied based on the following: (1) "A Motion to Strike is not a procedurally proper response to a Motion to Dismiss" (Id., p. 2.); (2) "Plaintiff has not properly responded to Defendants BAC and BANA's Motion to Dismiss" (Id., pp. 3 - 4.) (3) "Rule 12(f) motions to strike are disfavored" (Id., pp. 4 - 5); and (4) "Plaintiff's Motion to Strike and corresponding Affidavit do not

---

[3]  The undersigned notes that it is improper for a plaintiff to raise new facts or claims in response to a motion dismiss. *See McClanahan v. Director of Dept. of Corrections*, 2013 WL 5988957 (W.D.Va. 2013)(noting "that Petitioner cannot hint at new claims for habeas relief in a response to a motion to dismiss and expect the court to make Petitioner's case for him"); *McNulty v. Communications Workers of America*, 2012 WL 1569601 (W.D.N.C. March 16, 2012)("factual allegations contained in a response brief are not considered on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6)"); *also see McCoy v. Southern Energy Homes, Inc.*, 2012 WL 1409533 (S.D.W.Va. April 23, 2012)(District Judge Faber)(citations omitted)("A plaintiff cannot rely on a response to a motion for summary judgment to act as an amendment to correct deficiencies in a complaint challenged by a defendant's motion for summary judgment").

rebut Defendants' defense of insufficient service" (Id., pp. 5 - 6.). BAC and Bank of America, therefore, contend that Plaintiff's Motion to Strike is "nothing more than an attempt to assert factual allegations and new legal theories without rebutting any defenses stated in Defendants' Motion to Dismiss." (Id., p. 6.)

## THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

## ANALYSIS

1.    ***Res Judicata*:**

In its' Motion to Dismiss, Citibank argues that Plaintiff's Complaint should be dismissed based upon the "doctrine of *res judicata*." (Document Nos. 25 and 26.) Citibank explains that it

"filed suit and obtained judgment against Plaintiff in the Ohio Civil Action for amounts owed on a credit account, the same credit account which Plaintiff now claims was opened fraudulently in his name." (Id.) As Exhibits, Citibank attaches the following: (1) A copy of Citibank's "Complaint for Money" as filed in Lorain County Court of Common Pleas in Citibank v. Smith, Case No. 08-cv-9504 (Document No. 25-1, pp. 1 - 3.); (2) A copy of the Lorain County Court of Common Plea's "Public Docket Information" regarding Citibank v. Smith, Case No. 08-cv-9504 (Id., pp. 4 - 6.); (3) A copy of the "Answer of Defendant with Jury Demand Endorsed Hereon" as filed in Lorain County Court of Common Pleas in Citibank v. Smith, Case No. 08-cv-9504 (Id., pp. 7 - 9.); and (4) A copy of Citibank's "First Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions" as filed in Lorain County Court of Common Pleas in Citibank v. Smith, Case No. 08-cv-9504 (Id., pp. 10 - 22.).[4] Plaintiff did not file a Response disputing Citibank's above argument.

The preclusive effects of the doctrines of *res judicata* and collateral estoppel are designed to promote judicial economy, encourage reliance on judicial decisions, and relieve parties from the expense of multiple lawsuits. See Parklane Hosiery Co. Inc. v. Shore, 439 U.S. 322, 326, 99, S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); Wright & Miller, § 131.12[4][a]. "Under *res judicata*, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Young-Henderson v. Spartanburg Area Mental Health Center, 945 F.2d 770, 773 (4th Cir. 1991)(*quoting*, Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210

---

[4] When addressing a motion to dismiss under Rule 12(b)(6), a court generally may not look outside the complaint unless it treats the motion to dismiss as a motion for summary judgment. A court may, however, take judicial notice of matters in the public record without converting a motion to dismiss into one for summary judgment. *Philips v. Pitt County Memorial Hospital*, 572 F.3d 176 (4th Cir. 2009). This includes prior or other court records. *See Witthohn v. Federal Insurance Co.*, 164 Fed.Appx. 395 (4th Cir. 2006).

(1979). Collateral estoppel "precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding." In re McNallen, 62 F.3d 619, 624 (4th Cir. 1995). The doctrine of *res judicata* applies if the following elements are satisfied: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and present suit; and (3) an identity of the parties or their privies." Pueschel v. U.S., 369 F.3d 345, 354-55 (4th Cir. 2004). The Court will consider the above-referenced elements in determining whether the prior judgment entered by the Lorain County Court of Common Pleas precludes Plaintiff's claims against Citibank.

First, the undersigned finds that there was a final judgment on the merits by the Lorain County Court of Common Pleas in Citibank v. Smith, Case No. 08-cv-9504 ["Ohio Civil Action"]. Following discovery in the Ohio Civil Action, Citibank filed a Motion for Summary Judgment. By "Judgment Entry" dated November 5, 2009, Lorain County Court of Common Pleas granted Citibank's Motion for Summary Judgment finding no genuine issue of material fact existed and that Citibank was entitled to judgment as a matter of law.

Next, the Court finds that the cause of action in both the earlier suit and the present suit are the same. Lawsuits are deemed to have the same cause of action if the two suits "arise from the same transaction or series of transactions or the same core of operative facts." Harnett v. Billman, 800 F.2d 1308, 1312 n. 1 (4th Cir. 1986); see also Sullivan v. Easco Corp., 662 F. Supp. 1396, 1408 (1987)("Two causes of action are deemed the same for the purposes of *res judicata* only if the same evidentiary facts would support both actions."). Identical to the Ohio Civil Action, Plaintiff's Mastercard Account ending in 6818 is the subject of the instant suit. In the Ohio Civil Action,

Citibank alleged that Plaintiff owed $18, 126.07 on the Account ending in 6818. In the instant case,

Plaintiff alleges that the same account was the result of a "Fraudulent Account" and "Identity Theft."

Discovery was conducted in the Ohio Civil Action, and the following Requests of Admissions and

Interrogatories were presented to Plaintiff:

> **REQUEST FOR ADMISSION NO. 3:** Admit that you received monthly statements for your Citibank (South Dakota), N.A. MasterCard credit card account no. xxxx-xxxx-xxxx-xxxx.

> **INTERROGATORY NO. 6:** If you deny the above, state the reason for your denial.

> **REQUEST FOR ADMISSION NO. 5:** Admit that your current balance is $18,126.07 plus interest at 5.0% interest per annum from date of judgment plus costs of this action.

> **INTERROGATORY NO. 8:** If you deny the above, state the reason for your denial including what you believe to be the current balance.

> **REQUEST FOR ADMISSION NO. 6:** Admit that you agreed to pay the interest at the rate indicated on our monthly statement.

> **INTERROGATORY NO. 9:** If you deny the above, state the reason for your denial.

> **REQUEST FOR ADMISSION NO. 7:** Admit that you made the purchases and/or cash advances shown on the statements that you received from Citibank (South Dakota), N.A.

> **INTERROGATORY NO. 10:** If you deny Request for Admission No. 7, what purchase(s) and/or cash advances to your Citibank (South Dakota), N.A. extension of credit were made by a person other than yourself or an authorized user?

> **REQUEST FOR ADMISSION NO. 8:** Admit that no individual other than yourself or an authorized user made charges with your charge card.

> **INTERROGATORY NO. 11:** If you deny Request for Admission No. 8, what purchase(s) and/or cash advances to your Citibank (South Dakota), N.A. extension of credit were made by a person other than yourself or an authorized user?

> **REQUEST FOR ADMISSION NO. 9:** Admit that you are responsible to Citibank (South Dakota), N.A. in the amount of $18,126.07 plus interest at 5.0% per annum from date of judgment.

(Document No. 25-1, pp. 10 - 22.) Thus, the validity of the Account ending in 6818 was the subject of the earlier suit and the present suit. Clearly, Plaintiff could have challenged the validity of the Account in the Ohio Civil Action. Therefore, the undersigned finds that claims set forth in the Ohio Civil Action arise out of the same circumstances and are therefore the same as the claims in the present case.

Finally, the undersigned finds that the Ohio Civil Action and the present action involve identical parties. Specifically, Plaintiff and Citibank were both parties to the Ohio Civil Action and the instant case.

Based on the foregoing, the undersigned finds that Plaintiff's present action against Citibank is barred by the doctrine of *res judicata*. The prior lawsuit (1) was a final judgment on the merits, (2) involved the same causes of action, and (3) involved the same parties. The Court further finds that Plaintiff had a full and fair opportunity to litigate the claims in the prior action brought before the Lorain County Court of Common Pleas. Accordingly, the undersigned recommends that the District Court grant Citibank's Motion to Dismiss (Document No. 25.).

## 2.    Failure to State a Claim:

Although pleadings filed by a *pro se* plaintiff are entitled to liberal construction, this "does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court." Drummond v. South Carolina Department of Corrections, 2012 WL 5077575, * 3 (D.S.C. Oct. 1, 2012)(citing Weller v. Department of Social Services, 901 F.2d 387, 390-91 (4th Cir. 1990)). Federal Rule of Civil Procedure 8(a)(2) provides that "[a] pleading that states a claim for relief must contain * * * (2) a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 8(d)(1) provides that the allegations

contained in the pleading "must be simple, concise and direct." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949(quoting Twombly, 550 U.S. at 570, 127 S.Ct. at 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Thus, when a defendant challenges the sufficiency of a complaint under Rule 8(a)(2), the Court examines the factual allegations contained therein to determined if they reasonably indicate that discovery will yield evidence of all of the elements of the plaintiff's claim. If, viewing the factual allegations as true, the Court cannot conclude that discovery will yield evidence of all of the elements of the plaintiff's claim, the Court must dismiss the claim.

### A.      *FCRA Preempts Any State Law Claims:*

To the extent Plaintiff is alleging a State law claim, Bayview, Litton, BAC, and Bank of America, argue that Plaintiff's claim is preempted by the FCRA. (Document No. 14, p. 4, Document No. 18, pp. 2 - 5; Document No. 33, p. 5.)

The Fair Credit Reporting Act ["FCRA"] exclusively regulates reporting and use of credit information. See 15 U.S.C. § 1681, *et seq*. Additionally, the FCRA contains preempt provisions concerning State law claims. Section 1681t(b) provides, in pertinent part, as follows: "No

requirement or prohibition may be imposed under the laws of any State (1) with respect to any subject matter regulated under . . . (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . .." 15 U.S.C. § 1681t(b)(1)(F). Additionally, Section 1681h(e) provides as follows:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). Thus, the above preemptive provisions conflict. Although the Fourth Circuit Court of Appeal has acknowledged the apparent conflict, the Fourth Circuit has not directly addressed how to resolve the conflict. See Ross v. FDIC, 625 F.3d 808, 814, n. 2 (4th Cir. 2010). District Courts within the Fourth Circuit and other Court of Appeals have resolved the conflict by applying three distinct approaches: (1) the "total preemption approach;" (2) the "temporal approach;" and (3) the "statutory approach." Evans v. Trans Union, LLC, 2011 WL 672061, * 4 - 7 (S.D.W.Va. Feb. 14, 2011)(District Judge Johnston). This Court has resolved the conflict by applying the "statutory approach." Id. at * 6; also see Bourdelais v. JP Morgan Chase Bank, N.A.,2012 WL 5404084, * 6 (E.D.Va. Nov. 5, 2012)("Seven of the nine district courts in the Fourth Circuit, including this Court, have reconciled this conflict using the 'statutory approach.'") Under the "statutory approach," Section 1681t(b)(1)(F) applies only to state statutory causes of action, and Section 1681h(e) applies only to state common law claims. Evans, 2011 WL 672061 at * 6. In determining whether Section 1681h(e) applies to a state common law claim, the Court must conduct

a two-step inquiry:

> First, we ask whether the claim falls within the scope of § 1681h(e), which includes only claims "based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report." The second step in the analysis involves determining whether the "malice or will intent to injure" exception to the general bar against state law actions applies.

Ross, 625 F.3d at 814(citing 15 U.S.C. § 1681h(e)). Based on the foregoing, the undersigned disagrees with Defendants' argument that the FRCA completely preempts all state common law causes of action. A review of Plaintiff's Complaint, however, does not reveal that Plaintiff is asserting a state statutory claim or a state common law claim. The undersigned, therefore, finds it unnecessary to address whether any of Plaintiff's State law claims would be preempted by the FCRA.

**B.      *Failure to State a Claim under the FCRA:***

The FCRA imposes various obligations on three types of entities: consumer reporting agencies (CRAs), users of consumer credit reports, and entities that furnish debt information to CRAs, or 'furnishers.'" Evans, 2011 WL 672061, at * 3(citing, 15 U.S.C. §§ 1681-1681x). Generally, the FCRA imposes two sets of duties upon furnishers. See 15 U.S.C. § 1681s-2(a) and (b). First, Section 1681s-2(a) imposes a duty upon the furnisher to provide accurate information. 15 U.S.C. § 1681s-2(a). Second, upon receiving a dispute of inaccuracy from a *credit reporting agency*, Section 1681s-2(b) imposes a duty upon the furnisher to conduct a reasonable investigate, report the results of that investigation to the credit reporting agency, and modify or delete any inaccurate information. 15 U.S.C. § 1681s-2(a) and (b); also see Johnson v. MBNA America Bank, NA, 357 F.3d 426, 429 (4th Cir. 2004)(finding that the FCRA imposes duties on a furnisher to investigate,

correct and update inaccurate information when the furnisher "has been notified by a credit reporting

agency that a consumer has disputed information furnished by a creditor").

In the instant case, Plaintiff's Complaint merely sets forth conclusory claims of violations

of the FCRA. Construing Plaintiff's complaint liberally, his allegations do not state the essential

elements of a FCRA claim. Specifically, Plaintiff fails to allege any facts explaining how any of the

defendants violated the FCRA. To the extent Plaintiff is attempting to assert a claim under Section

1681s-2(a), the undersigned finds that there is no private right of action under Section 1681s-2(a)

for furnishing inaccurate information to a credit reporting agency. Carney v. Experian Info.

Solutions, Inc., 57 F.Supp.2d 496, 502 (W.D.Tenn. 1999)("liability for violations of § 1681s-2 are

limited, and the provisions for civil liability set forth in 15 U.S.C. § 1681n and 1681o do not apply

to any violation of § 1681s-2"); Gibbs v. SLM Corp., 336 F.Supp.2d 1, 11 (D.Mass. 2004)("courts

have consistently held that there is no private action for violations of § 1681s-2(a)").

To the extent Plaintiff is attempting to assert a claim under Section 1681s-2(b), the

undersigned further finds that Plaintiff has failed to state a claim. The FCRA provides that upon

receiving a dispute of accuracy from a *credit reporting agency*, a furnisher is obligated to conduct

a reasonable investigation of the dispute, report its results to the credit reporting agency, and modify

or delete incorrect information. See 15 U.S.C. § 1681s-2(b). "Courts have consistently held that for

the duty imposed by § 1681s-2(b) to be triggered, the furnisher of information must have received

notice of the dispute from a consumer reporting agency, not from a consumer." Peasley v. Version

Wireless LLC, 364 F.Supp.2d 1198, 1200 (S.D.Cal. 2005); see also Beattie v. Nations Credit Fin.

Services Corp., 65 Fed.Appx. 893, 899 (4th Cir. 2003), citing Carney v. Experian Info. Solutions,

Inc., 57 F.Supp.2d 496, 502 (W.D.Tenn. 1999)("statutorily created obligation imposed on a

16

furnisher of information is owed only to the consumer reporting agency and not to the consumer, and an individual such as plaintiff cannot state a claim under 15 U.S.C. § 1691s-2(b)"). Thus, a furnisher of credit information, such as the Defendants, have no responsibility to investigate a credit dispute until after it receives notice from a consumer reporting agency. See Copley v. Fairbank, 2011 WL 2421024 (S.D.W.Va. June 13, 2011)("a creditor's duties under § 1681s-2(b) are triggered by receipt of notice from a credit reporting agency of a credit dispute"); Stafford v. Cross Country Bank, 262 F.Supp.2d 776, 783-84 (W.D.Ky. 2003). In the instant case, Plaintiff does not allege that he notified any credit reporting agency of his dispute regarding the alleged inaccurate information or that Defendants were notified by a credit reporting agency that the information was in dispute. Plaintiff appears to merely contend that he notified Defendants directly of the dispute, which is insufficient to state a claim under the FCRA. Accordingly, the undersigned recommends that Defendants Bayview, Litton, and BAC and Bank of America's Motions to Dismiss (Document Nos. 13, 17, and 32.) be granted to the extent they seek dismissal of the action for failure to state a claim and Plaintiff's Motion to Strike (Document No. 37.) be denied. The undersigned finds it unnecessary to consider the other reasons which the Defendants have submitted for dismissal.

**3.      Plaintiff's Motion for Default Judgment:**

In his Motion for Default Judgment, Plaintiff argues that he is entitled to default judgment against FFCC and GMAC because they "never responded to the allegations as of date." (Document Nos. 22 and 24.) In Response, FFCC argues that Plaintiff's Motion for Default Judgment should be denied that "FFCC was neither properly served with the complaint nor did it ever receive the copy of the complaint Plaintiff allegedly sent." (Document No. 27.) In Response to Plaintiff's Motion for Default, GMAC filed its "Notice of Bankruptcy and Effect of Automatic Stay." (Document No. 29.)

GMAC further noted that it was not named a party-defendant in Plaintiff's Complaint. (Id., p. 1, fn. 1.)

Rule 55(a) of the Federal Rules of Civil Procedure permits the entry of default judgment "[w]hen a party against whom affirmative relief is sought has failed to plead or otherwise defend as provided by these rules . . .." Default judgment, however, cannot be entered against a defendant who has not been properly served. When sufficiency of service is raised as a defense under Rule of Civil Procedure 12(b)(5), the plaintiff has the burden of establishing that service of process has been effectuated in conformity with Rule 4. See Wolfe v. Green, 660 F.Supp.2d 738, 750 (S.D.W.Va. 2009). When it is evident that a party has failed to accomplish service of process pursuant to Rule 4, dismissal is in order. Federal Rule of Civil Procedure 4(h) states how a party must serve a Summons and Complaint upon an corporation, partnership or association within a judicial district of the United States as follows:

> **(h) Serving a Corporation, Partnership, or Association.** Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
> > (1) in a judicial district of the United States:
> >
> > > (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
> > >
> > > (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and - - if the agent is one authorized by statute and the statue so requires - - by also mailing a copy of each to the defendant; or
> > >
> > > * * *

Federal Rule of Civil Procedure 4(e) states how a party must serve a Summons and Complaint upon an individual within a judicial district of the United States as follows:

**(e)** **Servicing an Individual Within a Judicial District of the United States.**
Unless federal law provides otherwise, an individual - - other than a minor,
an incompetent person, or a person whose waiver has been filed - - may be
served in a judicial district of the United States by:

(1) following state law for serving a summons in an action brought in courts
of general jurisdiction in the state where the district court is located or where
service is made; or

Rule 4(e)(1) provides that an individual may be served "by following state law for serving

a summons in an action brought in courts of general jurisdiction in the state where the district court

is located or where service is made." Rule 4(d)(1) of the West Virginia Rules of Civil Procedure

provide, in pertinent part, that personal or substituted service shall be made in the following manner:

(5) *Domestic Private Corporations.* Upon a domestic private corporation,
(A) by delivering or mailing in accordance with paragraph (1) above a copy
of the summons and complaint to an officer, director, or trustee thereof; or
if no such officer, director, or trustee be found, by delivering a copy thereof
to any agent of the corporation . . .; or

(B) by delivering or mailing in accordance with paragraph (1) above a copy
thereof to any agent or attorney in fact authorized by appointment or by
statute to receive or accept service in its behalf.

\* \* \*

(7) *Foreign Corporations and Business Trusts Qualified to Do Business.* Upon
a foreign corporation, including a business trust, which has qualified to do
business in the State, by delivering or mailing in accordance with paragraph
(1) above a copy of the summons and complaint as provided in Rule 4(d)(5).

(8) *Foreign Corporations and Business Trusts Qualified to Do Business.* Upon
a foreign corporation, including a business trust, which has not qualified to
do business in the State,
(A) by delivering or mailing in accordance with paragraph (1) above a copy
of the summons and complaint to any officer, director, trustee, or agent of
such corporation; or

(B) by delivering or mailing in accordance with paragraph (1) above copies
thereof to any agent or attorney in fact authorized by appointment or by
statute to receive or accept service in its behalf.

19

First, the undersigned will consider whether Plaintiff is entitled to default judgment against GMAC. A review of the record reveals that GMAC was not named as a defendant in Plaintiff's Complaint. (Document No. 1, pp. 6 - 9.) Therefore, GMAC was never served with a Summons and Complaint. Accordingly, the undersigned recommends that Plaintiff's Motion for Default Judgment against GMAC (Document No. 24.) be denied.[5]

Next, the undersigned will consider whether Plaintiff is entitled to default judgment against FFCC. A review of the record reveals that Plaintiff attempted to serve FFCC by sending a copy of his Complaint by U.S. regular mail to 2470 Chagrin Blvd., Beachwood, Ohio. (Document No. 1.) There is no evidence, however, that Plaintiff delivered or mailed the Summons and Complaint in compliance with Federal or State law. Specifically, there is no indication that the Summons and Complaint was received by an officer, director, trustee, or agent of the corporation, or any agent or attorney in fact authorized by appointment or by statute to receive or accept service on behalf of the corporation. Brian Himmell, the President of FFCC, submits his Statement Under Penalty of Perjury, stating as follows: (1) "FFCC keeps records of legal papers such as a summons and complaint;" (2) "Upon my review of FFCC's records, FFCC has no record of receiving a summons and complaint in this action or the underlying state court action;" and (3) "FFCC has never maintained an office or agent at 2470 Chagrin Blvd., Beachwood, Ohio." (Document No. 27, p. 5.) Based on the foregoing, the undersigned finds that FFCC was never properly served. Accordingly, the undersigned recommends that Plaintiff's Motion for Default Judgment against FFCC (Document

---

[5]   The undersigned further notes that Federal Rule of Civil Procedure 4(m) provides as follows: "If a defendant is not served within 120 days after the complaint is filed, the court - - on motion or on its own after notice to the plaintiff - - must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

No. 22.) be denied.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendant Bayview Loan Servicing's Motion to Dismiss (Document No. 13.); **GRANT** Defendant Litton Loan Servicing's Motion to Dismiss (Document No. 17.); **DENY** Plaintiff's Motion for Default Judgment Against First Federal Credit Control (Document No. 22.); **DENY** Plaintiff's Motion for Default Judgment Against GMAC Mortgage (Document No. 24.); **GRANT** Defendant Citibank N.A.'s Motion to Dismiss (Document No. 25.); **GRANT** Defendants BAC Home Loan Servicing, LP and Bank of America, N.A.'s Motion to Dismiss (Document No. 32.); and **DENY** Plaintiff's "Motion to Strike the Defendants' Pleadings in Whole" (Document No. 37.).

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985);

Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94

(4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber

and this Magistrate Judge.

      The Clerk is requested to send a copy of this Proposed Findings and Recommendation to

Plaintiffs, who are acting *pro se*, and transmit a copy to counsel of record.

      Date: January 15, 2014.

R. Clarke VanDervort
United States Magistrate Judge